(110 So. 91)

No. 25992.

**BUCKELEW et al. v. WYCHE et al.**

(Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

**Compromise and settlement** ⬤⟺23(3).

Where evidence in suit to annul compromise made under Civ. Code, art. 3071, showed no more fraud than evidence before parties when compromise was made, compromise could not be annulled under articles 1832 and 3079.

Appeal from Second Judicial District Court, Parish of Bossier; Robert Roberts, Jr., Judge.

Suit by F. C. Buckelew and others against R. E. Wyche and another. From a judgment for defendants, plaintiffs appeal. Affirmed. ·

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellants.

Murff & Perkins and W. A. Mabry, all of Shreveport, for appellee Wyche.

C. B. Prothro, of Shreveport, for appellee Taylor.

OVERTON, J. Buckelew, Curry & Co., a commercial firm composed of W. F. Buckelew, R. T. Curry, and N. W. Buckelew, acquired in 1896 from R. B. Poindexter the N. E. ¼ of section 16, township 19 N., R. 11 W., situated in the parish of Bossier. The firm was dissolved many years ago, and the members that composed it are now dead. On June 8, 1918, the property was sold in the name of Buckelew, Curry & Co., at tax sale, for the taxes of 1917, to R. E. Wyche and T. J. Taylor, the defendants herein. In January, 1919, a few months after the tax sale was made, Wyche, for purposes of convenience, executed a formal deed to Taylor, apparently conveying to him whatever interest he had acquired in the foregoing land, but had Taylor execute an instrument in his favor showing that the deed was only a simulated transfer. On May 8, 1919, while the property stood of record in the name of Taylor, A. C. Buckelew, an heir of W. F. Buckelew, deceased, the latter having been a member of the firm of Buckelew, Curry & Co., went to Taylor, paid him $50, and obtained the following receipt from him to wit:

"Benton, Louisiana, May 8, 1919.

"Received of A. C. Buckelew of Shreveport, La., fifty dollars ($50.00), and will on or before the first day of August, 1919, give him just such deed to the following land· as I acquired by buying said land at tax sale at Benton, La., on the 'sixth day of June, 1918. (In other words) will on demand deed all my claims to said land, without guaranty of title to Mr. Buckelew, to the following land to wit: The northeast quarter of section sixteen, township nineteen, range eleven, located in Bossier parish, Louisiana, same being one hundred sixty acres, more or less."

"[Signed] Tavner J. Taylor, "Benton, Louisiana."

"This contract to be returned to T. J. Taylor, when the deed is passed."

In October following the payment of the foregoing amount and the taking of the foregoing receipt, A. C. Buckelew died. In November following, F. C. Buckelew, a brother of A. C. Buckelew, in looking over the latter's papers, found the receipt, and got into communication with Taylor by telephone. In the course of the conversation over the telephone it developed that F. C. Buckelew contended that his brother had paid the $50 to redeem the property, and that Taylor should execute the proper redemption deed. On the other hand Taylor contended that the $50 was paid by A. C. Buckelew, as he expresses it, to obtain an extension of the time for redemption, though really meaning, as we gather, to obtain the right to acquire the property, after the period for redemption had passed,

by paying the amount necessary to redeem it; the purpose of A. C. Buckelew in so proceeding being to eliminate an apparent and not a real interest of the Currys in the property by acquiring the property in his name for the Buckelews after the year for redemption as fixed by law had passed instead of redeeming it for the tax debtor, Buckelew, Curry & Co. In this conversation Taylor took the position that he was not called upon to permit the redemption of the land nor to convey it to the Buckelews, since the year for redemption had passed, and since the extension granted had terminated without the redemption of the property by any one, and without A. C. Buckelew having availed himself of the right to pay the amount necessary for redemption, and thereby obtain a deed to the land, but expressed his willingness to convey a part of the property to the Buckelews upon receiving a deed from them to the part retained by him.

On the day of the foregoing conversation, or on the day following, F. C. Buckelew and his attorney went to Benton to see Taylor for the purpose of getting him, if possible, to deed to the Buckelews all of the property, taking with them the foregoing receipt. After examining the records at the courthouse to ascertain whether or not they could annul the tax sale, they went to see the defendant Wyche to get him to use his best endeavors to persuade Taylor to convey to the Buckelews the entire tract. Although Wyche had an undisclosed interest in the land, he was perfectly willing that the transfer be made, and, it seems, used his best efforts to get Taylor to make it, but in vain. A compromise, which was reduced to writing, was then entered into between the Buckelews and Taylor, by the terms of which the attorney for the Buckelews, or any one designated by F. C. Buckelew, was to receive for them a quitclaim deed to 120 acres of the land in consideration of their giving a similar deed to Taylor to the remaining 40 acres

thereof. A few days later the deeds were executed, pursuant to the agreement of compromise.

The land at the time of the compromise had but little value. It was considered as not being worth more than $5 an acre. However, about two years later, oil in paying quantities was discovered in close proximity to the land, and, of course, the property immediately rose greatly in value. At this time there seems to have been some difference between Taylor and Wyche as to whether the latter was entitled to any interest in the 40 acres deeded to the former in the compromise settlement. Nevertheless both of them, as well as the heirs of Wyche's deceased wife, joined in granting a mineral lease for $12,000 cash and a one-eighth royalty on the 40 acres deeded to Taylor.

The dispute between Wyche and Taylor was submitted to arbitration. F. C. Buckelew and the attorney for the Buckelews were present as witnesses at the arbitration. Both of them understood Taylor to state to the arbitrators that the $50, paid him by A. C. Buckelew, and for which he gave the foregoing receipt, was paid for the purpose of redeeming the property from the tax sale, and not, as previously represented by Taylor, for the purpose of extending the time for redemption to enable A. C. Buckelew to obtain a deed to the property, after the period fixed by law for redemption had expired, by then paying the amount required to redeem.

Acting upon the foregoing understanding of Taylor's statement by F. C. Buckelew and their attorney, the Buckelews instituted the present suit praying for judgment annulling said compromise and the deed to the 40 acres, executed thereunder in favor of Taylor, for the reason and upon the ground that said compromise and said deed were obtained by a fraudulent representation, which induced them to believe that their right to redeem the property had been lost or, at least, jeopar-

dized, and praying that the entire tract of 160 acres be decreed to have been redeemed from tax sale by the payment of said sum of $50, and further praying for judgment against defendants for the $12,000 received for said lease, and for judgment recognizing them as owners of the royalty to be paid under the lease.

It is obvious that for plaintiffs to recover they must annul the compromise entered into by which they adjusted their differences relating to the real property in question.

"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. This contract must be reduced into writing." Civil Code, art. 3071.

As between the parties to it, a compromise has a force equal to the authority of the thing adjudged. It cannot be attacked for an error of law or for lesion. Civil Code, art. 3078. It, however, may be annulled in cases where there exists fraud or violence. Civil Code, arts. 3079 and 1832.

In order to establish the fraudulent representation which plaintiffs contend Taylor made to them, and which they allege induced them to enter into the compromise, plaintiffs rely upon having proved that Taylor stated to the arbitrators that the $50 paid him by F. C. Buckelew was paid for the redemption of the property, which statement, if made, is in direct conflict with the representation made by Taylor over the telephone immediately before the compromise was consented to, and upon which the Buckelews acted in granting their consent.

The witnesses who testify that Taylor made the statement before the arbitrators, attributed to him by plaintiffs, are unquestionably sincere in giving their evidence. They are men of good repute; four in number, two of whom were members of the arbitration board.

However, it is common knowledge that statements made are at times misunderstood. In this instance the evidence indicates that these witnesses misunderstood Taylor. Five witnesses of good repute, two of whom were members of the arbitration board, and another, who was appointed to serve on the board, but who reached there too late for that purpose, the remaining two being the defendants, testify with equal certainty as those mentioned above that Taylor made no such statement before the arbitration board as the one attributed to him, but testify that he there stated that the payment was made to extend the term for redemption. Moreover, it is unlikely, as observed by the trial judge, that Taylor, with F. C. Buckelew and the attorney for the Buckelews present, would have made a statement which is directly in conflict with the one made by him at the time of the compromise, and which, we may add, would have had a direct tendency to show that neither he nor Wyche had any interest in the very land that was then in dispute between them. Our conclusion is that the preponderance of the evidence shows that Taylor was misunderstood, and did not make the statement attributed to him.

Stripped of the evidence relative to the statement alleged to have been made by Taylor before the arbitrators, the evidence before us is the same as that which was before the Buckelews at the time of the compromise. That evidence is the receipt and the statement made by Taylor (to the truth of which he swore while a witness on the stand, during the trial) that the $50 which was appreciably more than enough to redeem the property was not paid to redeem it, but to extend the time for redemption.

The Buckelews, with these facts before them, preferred to compromise rather than to take the chances of recovering the entire tract by proceedings in court. The evidence now before us comes no nearer justifying the

conclusion that Taylor perpetrated a fraud on the Buckelews by suppressing or misrepresenting a fact, which led them into error in compromising, than did the evidence before the Buckelews, when the compromise was made. With no change whatever in the evidence in that respect, we ought not to disturb the settlement made.

The district court rejected plaintiff's demands, and, we think, correctly so.

For the reasons assigned, the judgment appealed from is affirmed.

THOMPSON, J., recused.